IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:25-MJ-185 |
| ) | |
| STEVEN RAY MANDERS, ) | **UNDER SEAL** |
| ) | |
| *Defendant.* ) | |
| ) | |

**AFFIDAVIT IN SUPPORT OF A**
**CRIMINAL COMPLAINT AND AN ARREST WARRANT**

I, Natasha Diamond-Pate, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I submit this affidavit in support of a criminal complaint and arrest warrant charging Steven Ray Manders ("Manders"), a United States citizen and resident of Kathmandu, Nepal, with aggravated sexual abuse of a child, in violation of Title 18, U.S. Code, Section 2241(c). For the reasons set forth below, I submit that there is probable cause to believe that between on or about May 30, 2024, and on or about June 15, 2024, Manders, while within the special maritime and territorial jurisdiction of the United States in Kathmandu, Nepal, knowingly engaged in a sexual act, as defined in 18 U.S.C. § 2246(2)(C), with a person who had not attained the age of 12 years.

2. I am a Special Agent with the U.S. Department of State ("DOS"), and I am assigned to the Diplomatic Security Service ("DSS"), Office of Special Investigations ("OSI"). I have been employed as a Special Agent since 2010. My current responsibilities include the investigation of violations of United States criminal laws, to include criminal fraud, sexual assault, domestic violence, child abuse and neglect, and other violations of law affecting the programs and functions of the DOS. I have received training in conducting criminal investigations from DSS and

specialized training regarding sexual assault and child abuse investigations from a variety of state law enforcement agencies and non-governmental organizations. During my career, I have investigated or assisted in investigations concerning passport and visa fraud, sexual violence, domestic violence, child abuse and death. In 2010, I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, and the DSS Basic Special Agent Course in Dunn Loring, Virginia.

3. The statements contained in this affidavit are based in part on information provided by U.S. federal law enforcement agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; independent investigation and analysis by law enforcement agents, including witness interviews; and my experience, training, and background as a Special Agent. This affidavit contains information necessary to support probable cause for this application. This affidavit is intended to show simply that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge about this matter.

## SUMMARY OF PROBABLE CAUSE

4. As further described below, in March 2025, a minor female (hereinafter, "Minor Victim 1" or "MV1") disclosed to a mental health professional, and subsequently to her parents and to state law enforcement investigators, that in or around June of 2024, when she was 11 years old, she was twice sexually assaulted by Manders while at Manders' home in Kathmandu, Nepal. When confronted with the allegations, Manders denied them, but then attempted suicide. Manders thereafter made statements to his wife that indirectly acknowledged his culpability in sexually assaulting MV1. Based on state law enforcement records and witness interviews, there is evidence

that Manders previously sexually assaulted a different minor female in the 1980s, and a yet another minor female in the late 1990s.

### A. Manders' Residence and MV1's 2024 Visit

5. Manders is married to a U.S. State Department employee and is therefore permitted to accompany his spouse when she is deployed internationally. Beginning in October 2023, Manders' wife was assigned to Kathmandu, Nepal, so she and Manders moved there. Like most State Department couples, Manders and his wife were provided with a house ("the Kathmandu Residence") that had been leased by the United States government in order to provide housing to United States personnel, like Manders' wife, who are assigned to United States diplomatic and other missions in foreign states. The Kathmandu Residence therefore falls within the special maritime and territorial jurisdiction of the United States under 18 U.S.C. § 7(9). Manders' wife's assignment to Nepal runs until October 2026.

6. Between about May 30, 2024, and June 15, 2024, MV1 and her family visited Manders and his wife and stayed at the Kathmandu Residence.

### B. MV1's Disclosures

7. After their visit to Nepal, MV1 and her family returned to their home in the United States. MV1's parents soon noticed changes in MV1's behavior. She had frequent emotional outbursts and began struggling in school. MV1's parents had her see various mental health professionals, and she was in therapy for months.

8. In or around February of 2025, Manders came to the United States to have knee-replacement surgery and stayed with MV1's family for a full month while he recovered. Shortly after Manders returned to Nepal, MV1 disclosed to a mental health care provider that Manders had sexually assaulted her on two occasions when she was visiting him in Nepal the previous summer.

9.      Local police and family services professionals went to MV1's house and interviewed her and her parents. MV1 then participated in a child forensic interview. During both interviews, MV1 provided the same information, describing two sexual assaults that occurred hours apart.

10.     MV1 explained that on the first occasion, she was in the Kathmandu Residence, lying next to Manders at night, when Manders began touching her genital area with his hand. She described Manders slowly creeping his hand closer to her genitals, placing his hand into her pants, then under her underwear, and ultimately penetrating her vagina with his fingers. MV1 got up and walked away, which caused Manders to stop.

11.     The next morning, MV1 walked past Manders and he told her he was "sorry." MV1 asked Manders what he was sorry for, and he said, "Never mind." Later that day, MV1 walked out onto the third-floor balcony of the Kathmandu Residence. Manders followed her, which made her uncomfortable, so she tried to get away from him by walking up a spiral staircase that leads to a fourth-floor rooftop containing a water reservoir tank and little else. Manders again followed MV1. Once on the fourth floor, MV1 faced the railing and looked outward. Manders came up from behind her, put his hand into her pants and under her underwear, and inserted his fingers into her vagina. MV1 then told Manders she was going back downstairs to eat and returned to her parents.

12.     MV1 did not disclose these events to anyone at first, later stating that she did not think anyone would believe her. She disclosed the abuse to a friend in August or September of 2024 but told no one else until the disclosures in March 2025. MV1 told interviewers that it was distressing to have Manders in her home for a month in February 2025 and that Manders seemed exceedingly nice to her during his visit, providing her money and gifts, which she perceived as an effort to keep her quiet about the sexual assaults.

### C. Manders is Confronted with the Allegations

13. After MV1 disclosed her abuse to her mother, her mother informed Manders' wife, who in turn confronted Manders the next morning, on March 12, 2025. According to Manders' wife, he vehemently denied the allegations but then left the Kathmandu Residence and could not be found for about ten hours. Manders then walked back into the home with a deep, self-inflicted stab wound and cuts to his wrist. Manders' wife described Manders as having slurred speech, constricted pupils, and blood on his pants. He admitted to his wife that after being confronted about abusing MV1, he consumed all of his remaining medication from his knee surgery (cyclobenzaprine, a muscle relaxant, and gabapentin, a nerve pain medication), then took knives from the kitchen and went into a shed on the grounds of the Kathmandu Residence and cut his wrists. Manders told his wife that he passed out before he could "finish the job," and that his only regret was that he woke up. State Department officials transported Manders to a local hospital and prepared him for a medical evacuation to the United States.

14. While awaiting medical evacuation, Manders and his wife communicated by text message, email, and in person. When Manders' wife told him she would be interviewed by a federal agent the next day, he asked her "about me[?]" When his wife replied "Yes," Manders wrote, "Fuck I'm done." Manders' wife also recounted that she asked him something to the effect of, "Can you give me some insight into what happens to your brain when you do these horrific, impulsive things?" Manders' wife recalled that he paused and then answered, "Can we just leave that for the professionals, please? I don't know what to tell you."

15. On March 14, 2025, Manders was flown from Tribhuvan International Airport in Kathmandu, Nepal, to Dulles International Airport in Dulles, Virginia, arriving on March 15, 2025.

Manders was then transported to a hospital in Fairfax County, Virginia, where he remains voluntarily.

### D. Manders' Prior Sexual Assaults against Minors

16. In 1989, Manders entered a plea agreement in a Wyoming criminal case and was convicted of incest for performing a sexual act with a relative in 1984. Based on the criminal complaint originally issued in that case in 1988, the relative/victim was less than 12 years of age, and Manders engaged in sexual acts with her on multiple occasions from 1981-1984.

17. In 2025, Witness 1 agreed to be interviewed by me and another OSI agent. During the interview, Witness 1 revealed that when she was about 14 years old, Manders placed his hand on her thigh while she was seated next to him in a car and tried to move his hand up her leg. Witness 1 shifted in her seat and swatted Manders hand away. On another occasion, when Witness 1 was 17, Manders put his hand under Witness 1's shirt and bra and fondled her breasts, then tried to move his hand under her pants, but Witness 1 pushed his hand away and told him to stop. Witness 1 ran upstairs and locked herself in her room and Manders followed her up there and asked her if she wanted him to continue, and she told him "No."

## **CONCLUSION**

18.    Based on the foregoing, I respectfully submit there is probable cause to believe that between on or about May 30, 2024, and on or about June 15, 2024, Manders committed a violation of 18 U.S.C. § 2241(c) (aggravated sexual abuse of a child). I therefore respectfully request that a criminal complaint and arrest warrant be issued for Manders.

Respectfully submitted,

NATASHA M DIAMOND-PATE
Digitally signed by NATASHA M DIAMOND-PATE
Date: 2025.03.18 11:51:19 -04'00'

Natasha Diamond-Pate
Special Agent
U.S. Department of State
Diplomatic Security Service
Office of Special Investigations

Sworn and subscribed to in accordance with Fed. R. Crim P. 4.1 by telephone on March 18, 2025:

Digitally signed by Ivan Davis
Date: 2025.03.18 12:13:06 -04'00'

The Hon. Ivan D. Davis
United States Magistrate Judge
Alexandria, Virginia